IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**ANDRE WILSON**,                                    Case Number 1:13 CV 1625

      Petitioner,                              Judge Jeffrey J. Helmick

   v.                                              REPORT AND RECOMMENDATION

**BENNIE KELLY,** Warden

      Respondent.                            Magistrate Judge James R. Knepp II

### INTRODUCTION

     This is an action initiated, through counsel, by Petitioner Andre Wilson, a prisoner in state custody, seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition") (Doc. 1). Respondent Warden Bennie Kelly filed a Return of Writ (Doc. 5), Petitioner filed a Traverse[1] (Doc. 7), and Respondent filed a Sur-Reply (Doc. 9). The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated August 5, 2013). For the reasons discussed below, the undersigned recommends the Petition be denied and dismissed.

### FACTUAL BACKGROUND

     For purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings were erroneous. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state

---

1. Petitioner used "traverse" to identify what is currently referred to as a "reply". *See* Advisory Committee Notes (1976) to Rule 5 of Rules Governing Section 2254.

court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. Ohio's Eighth

District Court of Appeals set forth the following findings of fact:

> Wilson's convictions result from an incident that occurred just after 2:00 a.m. on the morning of June 28, 2008. At that time, the Honey Do Lounge was closing, and all the bar's customers were filing out into the parking lot. In the crowd were cousins Shaina and Fatima Germany. The cousins had to wait for Shaina's boyfriend to arrive; she had arranged for him to pick them up at closing for a ride home.

> Shaina passed the time chatting with a girlfriend. Fatima had seen Wilson while she was inside the bar, and she had made up her mind to speak with him. Fatima sought out Wilson who she believed was the father of her then-youngest child, an eight-month-old girl. Fatima became pregnant after a "one-night stand" with Wilson; although she did not know Wilson well, she wanted him to submit to a paternity test. Fatima and Wilson stood near Shaina while they were talking.

> As Fatima was concluding her conversation with Wilson, a man, later identified as Sharrieff Mapp, approached. Mapp commented that the women were "a nice-looking group of females." Mapp then realized the group was mixed; he told Wilson, "I thought you was a bitch standing right there."

> Wilson replied Mapp "could have never thought" any such thing; and walked a short distance away to "some cars." When he returned, he had a gun in his hand. He pointed the gun at Mapp and ordered him to the ground.

> Mapp protested that he did not mean to offend and held up his hands as he obeyed. The Germany cousins by that point had fled toward the front of the building. Each heard gunshots behind her as she ran.

> When the cousins believed the shooting was over, they returned to the parking lot to see Mapp writhing on the ground. Shaina's boyfriend arrived; the two cousins left the scene. Neither of them wanted to become further involved in the incident.

> One of the bar patrons, Latrice Robbins, saw Mapp as he lay face-forward on the pavement. Robbins watched as the gunman got into a van, which "took off real fast." She called 911 as she ran to Mapp's location. She waited for the emergency squad and spoke to police officers when they arrived.

> Despite medical efforts, Mapp soon died from the gunshot wound. The bullet had entered Mapp's lower back; when the bullet hit his pelvic bone, it deflected to cut into his femoral artery. The detectives who investigated the shooting recovered some bullet casings and obtained a description of the shooter, but were unable to discover his identity.

2

Approximately a year-and-a-half later, in January 2010, Shaina Germany became the victim of an armed robbery. She reported the incident to the police. At that time, she decided to acknowledge that she had witnessed the June 2008 shooting at the "Honey Do." Shaina also provided Fatima's name as another witness.

Both women gave written statements to the detectives. The cousins, however, knew Wilson from their "neighborhood" only by his street name of "Show." The detectives could not locate anyone who went by this street name.

A few months after Shaina gave her written statement, she heard Wilson had been shot. She called the homicide detectives to report this information. In this way, the detectives located Wilson as he was undergoing hospital treatment for a gunshot wound he sustained on March 20, 2010. The detectives assembled some photo arrays that contained Wilson's picture and showed the arrays on separate occasions to Shaina and Fatima; each woman chose Wilson's photo as the man she knew as "Show."

Detectives Diaz and Griffin spoke to Wilson during his hospital stay. They did not mention anything concerning the June 2008 shooting; rather, they questioned Wilson about whether he knew his own assailant and other individuals he might know. The detectives mentioned to hospital staff, however, that they expected Wilson would be indicted as the perpetrator of a homicide. A few days after the detectives' interview, but before any police appeared to arrest Wilson, Wilson left the hospital without having been medically discharged.

The detectives obtained an arrest warrant at the end of March 2010. Police officers executed the warrant in May 2010 at the home of Wilson's girlfriend. Wilson was discovered in an upstairs bedroom, hiding behind a dresser.

Wilson subsequently was indicted on five counts, charged with two counts of aggravated murder and two counts of kidnapping, all with firearm specifications, and with HWUD ["having a weapon while under a disability"]. He executed a jury waiver with respect to the charge of HWUD.

At the conclusion of his trial, the jury acquitted Wilson on Count 3, but found Wilson guilty on Count 1 of the lesser-included offense of murder, guilty of aggravated murder on Count 2, and guilty of kidnapping on Count 4, as well as guilty on all the firearm specifications. The trial court found Wilson guilty on Count 5, HWUD.

At sentencing, the state acknowledged Wilson's convictions on Counts 1, 2 and 4 were allied offenses pursuant to R.C. 2945.21(A); the state elected to proceed on Count 2. The trial court thereafter sentenced Wilson to a prison term of three years on the firearm specifications to be served prior to and consecutive with a term of life with the possibility of parole in 30 years. Wilson also received a concurrent three-year term on Count 5.

(Doc. 5-1, Ex. 13).

PROCEDURAL BACKGROUND

**Direct Appeal**

On February 4, 2011, Petitioner, through counsel, timely filed a notice of appeal with the

Eighth District Court of Appeals, Cuyahoga County. (Doc. 5-1, Ex. 9). Petitioner raised eleven

assignments of error:

1.  Defendant was denied a fair trial by reason of improper prosecutorial argument.

2.  Defendant was denied due process of law and a fair trial when the court overruled defendant's motion *in limine* to preclude evidence that defendant was shot and later hospitalized.

3.  Defendant was denied due process of law and a fair trial when the court, after admitting irrelevant evidence, failed to give any curative or limiting instruction.

4.  Defendant was denied due process of law when the prosecutor allowed Fatima Germany and Shaina Germany to read their entire police statement.

5.  Defendant was denied due process of law when the court failed to explain that the jury view did not constitute evidence in the case.

6.  Defendant was denied due process of law when jurors slept during trial.

7.  Defendant was denied due process of law when the court overruled defendant's motion for judgment of acquittal.

8.  Defendant was entitled to a new trial as the verdicts are against the manifest weight of the evidence.

9.  Defendant was denied due process of law when the court sentenced defendant for aggravated murder and notwithstanding the verdict of the jury finding defendant guilty of murder.

10. Defendant was denied due process of law and his right to jury determination when the court arbitrarily sentenced defendant to thirty (30) years to life fo[r] aggravated murder.

11. Defendant was denied effective assistance of counsel.

(Doc. 5-1, Ex. 10). On January 12, 2012, the Court of Appeals affirmed the judgment of the trial court and remanded for execution of sentence. (Doc. 5-1, Ex. 13).

On January 23, 2012, Petitioner filed an application for reconsideration in the court of appeals, which the State opposed. (Doc. 5-1, Exs. 14, 15). Petitioner's application for reconsideration was denied January 31, 2012. (Doc. 5-1, Ex. 16).

On March 6, 2012, Petitioner, through counsel, filed a notice of appeal to the Supreme Court of Ohio. (Doc. 5-1, Ex. 17). Petitioner asserted the following propositions of law:

1. A defendant has been denied a fair trial where a prosecuting attorney engages in misconduct by misrepresenting the evidence, commenting on the defendant's silence inflaming the jury to convict being the right thing along with disparagement of defense counsel.

2. A defendant has been denied due process of law and a fair trial when the court allowed the prosecutor to offer evidence that defendant was later shot and hospitalized which events were totally unrelated to the issue at hand.

3. A defendant has been denied due process of law and a fair trial when the court, after admitting irrelevant evidence and evidence of other bad acts, failed to give any curative or limiting instruction.

4. A defendant has been denied due process of law and a fair trial when the court allowed two prosecution witnesses to read their entire police statement on redirect examination.

5. A defendant has been denied due process of law when the court fails to explain to a jury that a jury view does not constitute evidence in the case.

6. A defendant has been denied due process of law when the court allows jurors slept [sic] during the course of the trial.

7. A defendant has been denied due process of law when the court fails to grant a motion for judgment of acquittal where there is insufficient evidence to permit a rational factfinder to return a verdict of guilty.

8. Due process of law requires the court to award a new trial where the verdicts are against the manifest weight of the evidence.

9. A defendant has been denied due process of law when the court sentences a defendant for aggravated murder where the jury also returned a verdict of murder only.

10. A defendant has been denied due process of law and his right to jury determination where a court arbitrarily sentences a defendant to thirty (30) years to life for aggravated murder.

11. A defendant has been denied his Sixth Amendment right to effective assistance of counsel where errors and omissions by counsel had prevented a defendant from having a fair trial.

(Doc. 5-1, Ex. 18). The State waived its right to file a response. (Doc. 5-1, Ex. 19). On May 9, 2012, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as "not involving any substantial constitutional question." (Doc. 5-1, Ex. 20).

**Post-Conviction Relief**

On October 28, 2011, while Petitioner's direct appeal was pending, Petitioner, by and through counsel, filed a petition for post-conviction relief asserting that his due process rights were violated because some of the jurors were sleeping during trial. (Doc. 5-1, Ex. 21). The petition stated, "the present record does not fully reflect the misconduct of the jurors sleeping", because "counsel failed to take any corrective action to bring this matter to the attention of the court". (Doc. 5-1, Ex. 21). The State filed a response. (Doc. 5-1, Ex. 22). On December 21, 2011, the Cuyahoga County Common Pleas Court found the unsworn statements of two witnesses and an affidavit by Defendant were not reliable and thus Petitioner's motion for post-conviction relief was denied. (Doc. 5-1, Ex. 23).

On February 29, 2012, Petitioner, through counsel, appealed the trial court's decision on his petition for post-conviction relief. (Doc. 5-1, Ex. 24) Petitioner asserted the following assignments of error:

1. Defendant was denied due process of law when the court dismissed the post-conviction petition without a hearing where defendant asserted substantive grounds for relief.

2. Defendant was denied due process of law when the court summarily discounted evidence of support of a petition for post conviction relief.

3. Defendant was denied due process of law when the court failed to give any credence of petitioner's affidavit and the statements of two observers.

(Doc. 5-1, Ex. 24). The State filed a brief in response. (Doc. 5-1, Ex. 26). On September 6, 2012, the court of appeals affirmed the judgment of the trial court (Doc. 5-1, Ex. 27).

## FEDERAL HABEAS CORPUS

On July 26, 2013, Petitioner filed the instant petition raising the following grounds for relief:

**GROUND ONE**: Sixth and Fourteenth Amendment

**Supporting Facts**: Petitioner was denied a fair trial where the prosecuting attorney engaged in misconduct by misrepresenting the evidence, commenting on petitioner's silence and inflaming the jury to convict petitioner as being the right thing along with disparagement of defense counsel.

**GROUND TWO**: Fourteenth Amendment

**Supporting Facts**: Petitioner was denied due process of law and a fair trial when the court allowed the prosecutor to offer evidence that petitioner was later shot and hospitalized which events were totally unrelated to the issue at hand. This was compounded when the court, after admitting that irrelevant evidence and evidence of other alleged bad acts failed to give any curative or limiting instruction.

**GROUND THREE**: Sixth and Fourteenth Amendment

**Supporting Facts**: Petitioner was denied a fair trial and denied his right of confrontation and cross-examination when the court permitted two prosecution witnesses to read their entire police statement on redirect examination.

**GROUND FOUR**: Sixth and Fourteenth Amendment

**Supporting Facts**: Petitioner was denied due process of law when the court failed to explain to the jury that a jury view did not constitute evidence. Moreover during the course of the trial the court allowed jurors to sleep.

**GROUND FIVE**: Fourteenth Amendment

**Supporting Facts**: Petitioner was denied due process of law when the court refused to grant a motion for judgment of acquittal where there was insufficient evidence to permit a rational factfinder to return a verdict of guilty. Petitioner was entitled to a new trial as the verdicts were against the manifest weight of the evidence.

**GROUND SIXTH**: Sixth and Fourteenth Amendment

**Supporting Facts**: Petitioner was denied due process of law when the court sentenced petitioner for aggravated murder where the jury returned a verdict of guilty of murder only. In addition, there was no jury determination and the court arbitrarily sentenced petitioner to thirty (30) years to life for aggravated murder.

**GROUND SEVEN**: Sixth Amendment

**Supporting Facts**: Petitioner was denied his right to effective assistance of counsel guaranteed by the Sixth Amendment where numerous errors and omissions by defense counsel prevented petitioner for [sic] having a fair trial.

(Doc. 1).

## JURISDICTIONAL ISSUES

For the following reasons, ground four and in part, ground seven, should be dismissed as procedurally defaulted and grounds two, three, five, and six should be dismissed as non-cognizable claims because this Court is without jurisdiction to decide them on their merits.

### *Procedural Default*

Before a Petitioner may seek a writ of habeas corpus in federal court pursuant to 28 U.S.C. §2254, he must exhaust his state court remedies by fairly presenting all of his constitutional claims to the highest state court and to all appropriate state courts prior to that. §2254(b),(c); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987). This requirement is satisfied when it is clear the claims are procedurally barred under state law. *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996).

8

When a habeas petitioner fails to present a claim to the state court either due to: (1) his failure to fairly raise that claim before the state courts while state remedies are still available; or (2) noncompliance with a state procedural rule which prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on review. *Wainwright v. Sykes,* 433 U.S. 72, 80, 84-87 (1977); *Engle v. Isaac*, 456 U.S. 107 (1982); *Seymour v. Walker*, 224 F.2d 542, 550 (6th Cir. 2000).

The second procedural bar – noncompliance with a state procedural rule, applies in this case. Federal habeas courts look to the four part test established in *Maupin v. Smith*:

1) whether the petitioner failed to comply with an applicable state procedural rule;

2) whether the state courts actually enforced the state procedural sanction;

3) whether the procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review;

4) if the above are met, whether the petitioner has demonstrated "cause" and "prejudice".

*Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (internal citations omitted)).

If, because of procedural default, a habeas corpus petitioner can no longer present one or more of his federal claims to the state courts, he has waived those claims for purposes of federal habeas review. Unless, however, a petitioner can show both cause for the failure to comply with the state procedural rule and prejudice resulting from the alleged constitutional violation. *See Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998). Demonstrating "cause" requires a petitioner to "show that 'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule." *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Demonstrating prejudice requires a

petitioner to show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *U.S. v. Frady*, 456 U.S. 152, 170 (1982).

In extreme cases, when cause and prejudice cannot be shown, a federal habeas court may hear a defaulted constitutional claim if the petitioner shows his conviction is the result of a fundamental miscarriage of justice, i.e., that he is "actually innocent." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In this regard, a petitioner must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence. *Schlup v. Delo*, 513 U.S. 298 (1995).

## **Ground Four**

In ground four of the Petition, Petitioner argues he was denied due process of law when (1) the court failed to explain to the jury that a jury view did not constitute evidence; and (2) jurors were allowed to sleep during his trial. (Doc. 1). Petitioner raised ground four in its entirety on direct appeal and addressed jurors sleeping during trial again in his motion for post-conviction relief. (Doc. 5-1 Exs. 10, 21). In both instances, Petitioner did not object during the pendency of trial proceedings, hence, he failed to fully and fairly present his claims in the state court system and ground four has been procedurally defaulted.

On direct appeal, Ohio's Eighth District Court of Appeals rejected Petitioner's claim that the trial court committed reversible error by failing to instruct the jury that its trip to the scene of the murder did not constitute evidence because Petitioner failed to raise this issue before the trial court. (Doc. 5-1, Ex. 13). The appellate court further rejected Petitioner's claim that jurors were sleeping during his trial because "the record reflects only [Petitioner] made this assertion, and he made this assertion only at his sentencing hearing." (Doc. 5-1, Ex. 13). Petitioner's counsel had

10

failed to raise this issue during trial, leaving the appellate court with no evidence on record to review; hence the Eighth District found both of these assignments of error to be without merit. (Doc. 5-1, Ex. 13). In doing so, the appellate court was enforcing Ohio's contemporaneous objection rule, which requires that parties preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been corrected. *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus.

The contemporaneous objection rule is an adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 335 (6th Cir. 2012) *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006). Petitioner has not shown cause for this default nor is he alleging actual innocence, therefore the Court cannot consider this ground.

Petitioner did raise the issue of jurors sleeping in his Petition for Post-Conviction Relief before the trial court and again on appeal to the Eighth District. (Doc. 5-1, Exs. 21, 25). However, this does nothing to cure his default. Even assuming the Eighth District had waived his default at trial, Petitioner did not appeal this decision to the Ohio Supreme Court, thus he procedurally defaulted on his Petition for Post-Conviction Relief and he has not provided cause for having done so. Accordingly, the undersigned recommends the Court dismiss ground four of the Petition in its entirety because it is procedurally defaulted.

**Ground Seven: Counsel's Failure to Object to Witness Testimony**

In his seventh ground for relief, Petitioner claims he received ineffective assistance of counsel because his trial attorney (1) failed to file a motion to suppress concerning the warrantless and unadvised questioning of Petitioner while he was confined at Metro Hospital; (2) failed to object to the prosecutor having two witnesses read their police statements; and (3) failed to object to hearsay.

The Eighth District Court of Appeals addressed Petitioner's first reason for claiming ineffective assistance of counsel, the failure to file a motion to suppress concerning the questioning of Petitioner while he was at Metro Hospital on its merits. (Doc. 5-1, Ex. 13). However, it dismissed the remaining portion of Petition's claim based on Ohio Appellate Procedure Rule 16(A)(7). Specifically the court found:

> Wilson also claims his trial counsel were [sic] deficient in failing to object to certain testimony the state presented. However, he cites no authority to support his claims as required by App.R. 16(A)(7). In *State v. Watson* (1998), 126 Ohio App.3d 316, 321, 710 N.E.2d 340, the court made the following pertinent observations:
>
> "An appellate court may rely upon App.R.12(A) in overruling or disregarding an assignment of error because of 'the lack of briefing' on the assignment of error. *Hawley v. Ritley* (1988), 35 Ohio St.3d 157, 159, 519 N.E.2d 390, 392-393. It is not the duty of an appellate court*** to support an appellant's argument as to any alleged error. *State v. McGuire* (Apr. 15, 1996), Preble App. No. CA95-01-001, unreported, at 40, 1996 WL 174609, affirmed (1997), 80 Ohio St.3d 390, 686 N.E.2d 1112. 'An appellate court is not a performing bear, required to dance to each and every tune played on an appeal.' Id., following *State v. Lorraine* (Feb. 23, 1996), Trumbull App. No. 95-T-5196, unreported, at 9, 1996 WL 207676."
>
> Under the circumstances, this court has no obligation to address the other alleged deficiencies Wilson asserts against his trial counsel. *State v.Durham,* Cuyahoga App. No. 94747, 2011-0hio-2256, '1[44.

(Doc. 5-1, Ex. 13).

As stated above, when noncompliance with a state procedural rule prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on review. *Wainwright v. Sykes,* 433 U.S. 72, 80, 84-87 (1977). Petitioner argues there was no procedural default because he identified portions of the record where he was denied his right to effective assistance of counsel. (Doc. 7, at 23-24). However, Petitioner's failure to identify portions of the record was not the reason his claim was dismissed for lack of briefing, rather it was dismissed because Petitioner failed to supply any law

in support of his arguments. (Doc. 5-1, Ex. 13). He only cited to the record and provided a restatement of facts. (Doc. 5-1, Ex. 10). Petitioner provided only a brief cite to one case and did not provide the court with any legal argument. (Doc. 5-1, Ex. 10). Consistent with the *Maupin* test, Petitioner failed to provide any authority to support his claims, as required by Appellate Rule 16(A)(7), the court actually enforced the sanction, the sanction constituted an adequate and independent state ground on which the state can foreclose federal review, and Petitioner has not provided just cause for having violated the rule. 785 F.2d at 138; (Doc. 7, at 23-26). Therefore Petitioner has procedurally defaulted on this portion of his seventh ground for relief and the Court should dismiss it accordingly.

### Non-cognizable Claims

Before turning to the merits of Petitioner's claims, the Court must determine whether Petitioner's claims are cognizable for the purposes of habeas corpus jurisdiction. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes two jurisdictional prerequisites for federal habeas corpus review of state convictions. 28 U.S.C. § 2254(a). First, the petitioner must be in custody. *Id*. Second, the petitioner must challenge the legality of custody on the ground it is, or was imposed, "in violation of the Constitution or laws or treaties of the United States." *Id*. Indeed, "[t]he writ of habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F. App'x 575, 582 (6th Cir. 2010) (citing 28 U.S.C. § 2254(a)); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) ("[a] claim based solely on an error of state law is not redressable through the federal habeas process.") (quoting *Estelle v. McGuire*, 502 U.S.62, 67–68 (1991)).

Nevertheless, habeas relief may be available if an alleged error of state law subjected the petitioner to a "fundamentally unfair" criminal process. *Williams v. Anderson*, 460 F.3d 789, 816

(6th Cir. 2006). "[T]he category of infractions that violate fundamental fairness is defined very narrowly", and includes only state rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1977) (citations omitted)); *see also Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993). Of relevance, "[f]ederal habeas courts review state court evidentiary decisions only for consistency with due process." *Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001) (citing *Patterson v. New York*, 432 U.S. 197, 202 (1977)). The habeas petitioner bears the burden to show "the principle of procedure violated by the rule (and allegedly required by due process)" is fundamental. *Bey*, 500 F.3d at 521.

### Grounds Two and Three

In his second and third grounds for relief, Petitioner asserts he was denied due process of law when the court (1) overruled his motion in limine to preclude evidence that he was shot and later hospitalized because this information was irrelevant and placed Petitioner in a bad light; (2) after admitting this evidence and evidence of other alleged bad acts, the court failed to provide a limiting instruction; and (3) denied his right to confront two prosecution witnesses, by allowing Fatima and Shaina Germany to read their entire police statements on redirect examination. (Doc. 1); Doc. 7, at 12-13). Petitioner argues these three errors violated his right to a fair trial.

It is not the province of a federal habeas court to re-examine state court determinations on state law issues. *Bey v. Bagley,* 500 F.3d 514, 519 (6th Cir.2007) (citing *Estelle v. McGuire,* 502 U.S. 62, 68 (1991)). Thus, a state court's ruling regarding the admissibility of evidence generally is not cognizable on federal habeas review. *See, e.g., Markham v. Smith,* 10 F'App'x. 323, 325 (6th Cir.2001). An erroneous evidentiary ruling by a state court is only cognizable in federal

14

habeas relief if the error denies a defendant "his fundamental right to a fair trial." *Id.* And even if an evidentiary error is treated as a due process error in a federal habeas petition, it is subjected to harmless error analysis whereby relief is mandated only if the error "had 'a substantial and injurious effect or influence on determining the jury's verdict.'" *Id.* (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 638, (1993)).

Petitioner's argument is based on the trial court not following certain Ohio evidentiary rules, thus it is not cognizable in this federal habeas petition. *Bey,* 500 F.3d at 519

Petitioner argues that his argument is cognizable because these evidentiary errors, taken singularly or cumulatively deprived him of his fundamental right to a fair trial. (Doc. 7, at 13). However, Petitioner provides no law which demonstrates that his claim rose to this level. (Doc. 7). Instead, Petitioner cites to Ohio and federal rulings on their respective rules of evidence and only uses constitutional language in the broadest sense. (Doc. 7, at 10-13). This is not sufficient to give rise to a constitutional claim. *See Abshear v. Moore,* 546 F.Supp.2d 530, 537 (S.D. Ohio) ("[m]erely using talismanic constitutional phrases like 'fair trial' or 'due process of law' does not constitute raising a federal constitutional issue.") (citing *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987)).

Therefore, Petitioner's second and third grounds for relief should be dismissed as non-cognizable because they do not raise a constitutional issue.

## Ground Five

In his fifth ground for relief, Petitioner argues there was insufficient evidence to permit a rational factfinder to return a verdict of guilty and that he was entitled to a new trial as the verdicts were against the manifest weight of evidence. (Doc. 1).

In forming his fifth ground for relief, Petitioner combines two assignments of error he raised separately on direct appeal. Compare (Doc. 1) with (Doc. 5-1, Ex. 10). Specifically, Petitioner combines his seventh assignment of error on direct appeal, where he argued that his motion for judgment of acquittal should have been granted because the evidence against him was insufficient to support a finding of guilt beyond a reasonable doubt, with his eighth assignment of error, where he argued he is entitled to a new trial under Ohio law because the verdict was against the manifest weight of evidence. (Doc. 5-1, Ex. 10).

These standards are not the same, a challenge that the verdict is contrary to manifest weight of evidence is non-cognizable in habeas proceedings, and must be dismissed. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Morris v. Hudson*, 2007 WL 4276665, at *2 (N.D. Ohio 2007) (citing *Steele v. Tambi*, 2007 U.S. Dist. LEXIS 33318, at *36-37).

As the court in *Morris v. Hudson* explained, any manifest weight challenge requires the reviewing court to consider and re-weigh the evidence presented at trial and to resolve issues of credibility in order to determine whether the jury lost its way and "created such a manifest miscarriage of justice as to require reversal." *Id.* at *2. However, under *Herrera v. Collins*, "a federal habeas court expressly may not undertake to weigh evidence, resolve conflicts in testimony, or otherwise make its own determination of guilt or innocence." *Id.* (citing 506 U .S. 390, 401-02 (1993)).

Here, although Petitioner attempts to form a constitutional claim by using constitutional language, a review of his argument demonstrates he is actually arguing his convictions are not supported by the weight of evidence because Fatima and Shaina German were not reliable witnesses. (Doc. 7, 17-22); (Doc. 5-1, Ex. 13). This is not sufficient to raise a constitutional

claim. *Franklin*, 811 F.2d at 326. Therefore, Petitioner's fifth ground for relief is non-cognizable and must be dismissed.

## Ground Six

In Petitioner's sixth ground for relief, he argues he was denied due process of law when (1) he was sentenced for aggravated murder when the jury also returned a verdict for murder; and (2) he was arbitrarily sentenced to 30 years to life for murder without a jury determination. (Doc. 1).

In making this argument, Petitioner relies on *State v. Duncan*, 796 NE.2d 1006 (1st. Dist. Ct. App. Ohio 2003) and *State v. Carusone*, 2003 WL 832061 (1st. Dist. Ct. App. Ohio), two cases which found error when a Defendant was convicted of both a greater offense and a lesser offense for the same crime at trial. (Doc. 7 at 22-23). Petitioner's argument relies entirely on Ohio law regarding when a person can be convicted of multiple offenses. (Doc. 7, at 22-23). He has failed to explain how his convictions for murder and aggravated murder, even if they do conflict, violate federal law, accordingly, his claim is non-cognizable. *Bey*, 500 F.3d at 519.

Petitioner next argues he was given an "enhanced sentence" based on facts that were not alleged in the indictment or found by the jury. (Doc. 7, at 23). However, Petitioner does not state which facts these are. (Docs. 1, 7). Instead, Petitioner argues, "the issue is to whether more than a minimum sentence should have been given to petitioner, had to be based on the jury findings". (Doc. 7, at 23). However, the Constitution only requires facts that "increase[] the penalty for a crime beyond the prescribed statutory maximum be submitted to a jury and proved beyond a reasonable doubt." *Blakely v. Washington*, 542 U.S. 296, 301-302 (2004).

Here, Petitioner was sentenced to life with the possibility of parole in 30 years, a penalty within the statutory range for aggravated murder. (Doc. 5-1, Ex. 13). Petitioner does not dispute

that this was within the statutory range for his conviction, hence he has not made a constitutional

argument. (Doc.1); (Doc. 7, at 23).

Accordingly, because Petitioner has failed to explain how being sentenced for both

murder and aggravated murder constitute a violation of federal law and because he was

sentenced within the statutory range, Petitioner's sixth ground for relief is non-cognizable and

should be dismissed.

## STANDARD OF REVIEW

Federal claims previously adjudicated by the state courts are governed by AEDPA,

codified at 28 U.S.C. § 2254(d). AEDPA provides that a federal court may not grant a writ of

habeas to a petitioner in state custody with respect to any claim adjudicated on the merits in state

court unless (1) the state court's decision was "contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court" or (2) the

state court's decision "was based on an unreasonable determination of the facts in light of the

evidence presented in the [s]tate court proceedings." *Taylor v. Withrow*, 288 F.3d 846, 850 (6th

Cir. 2002) (quoting 28 U.S.C. §2254(d)).

A state court decision is considered "contrary to . . . clearly established federal law" if the

two are "diametrically different, opposite in character or nature, or mutually opposed." *Williams

v. Taylor*, 529 U.S. 362, 405 (2000). To be deemed an "unreasonable application" of clearly

established federal law, a state-court decision on the merits must be "objectively unreasonable",

not simply erroneous or incorrect. *Id*; *Keith v. Mitchell*, 455 F.3d 662, 669 (6th Cir. 2006).

Meaning, a "state prisoner must show that the state court's ruling on the claim being presented in

federal court was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011).

## **Ground One**

In his first ground for relief, Petitioner argues he was denied a fair trial because the prosecuting attorney engaged in misconduct by (1) misrepresenting evidence, (2) commenting on petitioner's silence, (3) inflaming the jury to convict petitioner, and (4) disparaging defense counsel.  (Doc. 1). This argument is addressed on its merits.

The appellate court analyzed the issue and concluded that the decision of the trial court not to grant a mistrial based on misconduct should be affirmed. (Doc. 5-1, Ex. 13). Although the state court of appeals based its opinion on Ohio law, its analysis contained the same essential elements of the Sixth Circuit's analysis of prosecutorial misconduct claims.

The Sixth Circuit uses a two-step inquiry to determine whether prosecutorial misconduct violates a petitioner's due process rights. *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001). To satisfy the standard for prosecutorial misconduct, the conduct must be both improper and flagrant. *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006). If the remarks are deemed improper, the court then determines "whether the impropriety was flagrant and thus warrants reversal." *Carter*, 236 F.3d at 783.

Flagrancy is determined by reviewing the content and context of the comments using four factors: "(1) the likelihood that the remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against the defendant." *Simpson v. Warren*, 475 F. App'x 51, 59 (6th Cir. 2012) (quoting *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006)). When a prosecutor comments on a Defendant's

decision not to testify, the Sixth Circuit considers whether the judge gave a curative instruction rather than whether the prosecutor's comments were "deliberate or accidental". *Webb v. Mitchell*, 586 F.3d 383, 396 (6th Cir. 2009).

In reviewing a claim of prosecutorial misconduct, "the relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the conviction a denial of due process." *Lundgren*, 440 F.3d, 754, 778 (6th Cir. 2006) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). In evaluating fairness, the trial must be "taken as a whole and within the context of the entire record." *Lundy v. Campbell*, 888 F.2d 467, 472-73 (6th Cir. 1989).

Here, Petitioner has not shown that the Eighth District's decision is contrary to or involved an irrational application of clearly established federal law. Petitioner argues the prosecutor (1) improperly implied that Fatima Germany and Shaina Germany were "likely to suffer harm" for having testified; (2) bolstered Fatima's testimony claiming she had nothing to gain; (3) improperly asked Petitioner why he left the hospital; and (4) improperly told the jury that convicting Petitioner was the right thing to do. (Doc. 7, at 4-7). Petitioner provides very little federal law indicating the impropriety of these statements. (Doc. 7, at 4-7). He has provided no argument that these statements are flagrant or otherwise amount to a constitutional violation. (Doc. 7, at 4-7).

As the appellate court indicated, the prosecutor's remarks were made during closing arguments, in response to an argument made by the defense during their closing. (Doc. 5-1, Ex. 13). These comments were either within the bounds of propriety, or at a minimum, Petitioner is unable to show they were flagrant. Further, in making the comments, the prosecutor relayed his version of events but also reminded the jury to consider the law and when the court sustained the defense's objections, the prosecutor corrected his statements. (Doc. 5-1, Ex. 13).

In sum, each of the factors weigh against finding the prosecutor's closing statements violated Petitioner's constitutional rights. Given that the other evidence against Petitioner was strong and the prosecutor's statement was isolated and cured, the state appellate court's decision was not contrary to federal law or objectively unreasonable. Therefore, Petitioner's first ground for relief is without merit and should be denied.

## Ground Seven

In the remaining portion of Petitioner's claim in ground seven, he argues he received ineffective assistance of counsel because his trial attorney failed to file a motion to suppress concerning the warrantless and unadvised questioning of Petitioner while he was confined at Metro Hospital, this claim is addressed on its merits.

Effective assistance of trial counsel is guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 685 (1984). To prevail on an ineffective assistance of counsel claim, a petitioner must satisfy both prongs of the test set forth in *Strickland*: that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to render the trial unfair and unreliable. *Strickland*, 466 U.S. at 698; *See also Harries v. Bell*, 417 F.3d 631, 636 (6th Cir. 2005) (citing *Strickland*, 466 U.S. at 686–692).

To meet the deficient performance prong, counsel's representation must fall below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688. To meet the prejudice prong, there must exist a reasonable probability that, absent counsel's unprofessional errors, the results of the proceeding would have been different. *Id.* at 694. When considering the prejudice element, the focus is on whether counsel's errors undermined the reliability of and confidence in the result. *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (citing *Lockhart v. Fretwell*, 506 U.S. 364, 370 (1993)). This is a high burden:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689.

Review of a *Strickland* claim is doubly deferential in a § 2254 proceeding. *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (per curiam) ("Judicial review of a defense attorney[] . . . is . . . highly deferential – and doubly deferential when conducted through the lens of federal habeas."). This double deference arises because the *Strickland* standard is a general standard, giving a state court even more latitude to reasonably determine that a defendant has not satisfied the standard. *Knowles v. Mirzayance*, 556 U.S. 11, 123 (2009). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Richter*, 131 S. Ct. 770, 785 (2011). Accordingly, the pivotal question in any § 2254 action that presents an ineffective assistance claim, is "whether the state court's application of the *Strickland* standard was unreasonable." *Id*. at 785.

Here, the Eighth District Court of Appeals rejected Petitioner's ineffective assistance of counsel claim as follows:

> In order to successfully assert ineffective assistance of counsel under the Sixth Amendment, a defendant must show not only that the attorney made errors so serious that he was not functioning as "counsel," as guaranteed by the Sixth Amendment, but also that the deficient performance was so serious as to deprive defendant of a fair and reliable [trial]. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373,

There are many ways to provide effective assistance in any given case, therefore, scrutiny of counsel's performance must be highly deferential, and there will be a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id.; see, also, *Vaughn v. Maxwell* (1965), 2 Ohio St.2d 299, 209 N.E.2d 164. Counsel will not be deemed ineffective for failing to make futile motions. *State v. Parra,* Cuyahoga App. No. 95619, 201 l-Ohio-3977, '1[78. Counsel also need not enter unwarranted objections at trial. *State v. Smith,* Cuyahoga App. No. 95541, 2011-0hio-3581, '1[63.

It is well established that the state may not use statements obtained during a "custodial interrogation" of a suspect unless the police have used procedural safeguards to secure the defendant's Fifth Amendment right against self-incrimination. *Miranda v. Arizona* (1966), 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L.Ed.2d 694. Thus, in order to preserve this right, prior to commencing a custodial interrogation, the police must advise a suspect of his right to remain silent and to have legal counsel present at interrogation. Id. at 467-470.

However, not every interrogation is a custodial one. *State v. Davis,* Clark App. No. 08CA01l7, 2010-0hio-5279. In this case, Det. Smith testified that he merely interviewed Wilson at the hospital, and that he did not ask Wilson anything about Wilson's possible involvement in any criminal activity. Smith stated adamantly that he especially steered clear of mentioning Mapp's murder.

Therefore, the totality of the facts and circumstances demonstrate the non-custodial character of Wilson's interrogation. "Considered objectively, a reasonable person in Defendant's position would not have believed, under all of these circumstances, that [he] was under arrest or its functional equivalent." Id., if20, citing *State v. Hatten,* 186 OhioApp.3d 286, 2010-0hio-499, 927 N.E.2d 632. Since Wilson was not in custody, *Miranda* warnings were not required, and trial counsel had no obligation to file a motion to suppress this evidence.

(Doc. 5-1, Ex. 13).

Upon review, the finding that Petitioner's counsel had no obligation to file a motion to suppress was reasonable. As the Eighth District explained, Petitioner was not in police custody at the hospital and had no reason to believe that he was. (Doc. 5-1, Ex. 13). In fact, Petitioner was not even asked about his involvement with criminal activity. (Doc. 5-1, Ex. 13).

Accordingly, the court of appeals' application of the *Strickland* test was reasonable and Petitioner's assertion to the contrary is without merit. Therefore, Petitioner's seventh ground for relief should be dismissed.

### CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the undersigned recommends the Court dismiss the Petition.

 s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).